[Cite as *In re D.T.*, 2017-Ohio-571.]

STATE OF OHIO        )                IN THE COURT OF APPEALS
                         )ss:           NINTH JUDICIAL DISTRICT
COUNTY OF LORAIN    )

IN RE: D.T.
       D.G.

C.A. No.     16CA011020

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE Nos.   14JC41676
                14JC41677

DECISION AND JOURNAL ENTRY

Dated: February 21, 2017

HENSAL, Presiding Judge.

{¶1}    Appellant, Krystal B. ("Mother"), appeals from a judgment of the Lorain County Court of Common Pleas, Juvenile Division, that terminated her parental rights to two of her minor children and placed them in the permanent custody of Lorain County Children Services ("LCCS"). This Court affirms.

I.

{¶2}    Mother is the biological mother of the two children at issue in this appeal: D.T., born March 19, 2010; and D.G., born October 28, 2012. Although Mother has two other children, they are not at issue in this appeal. The children's fathers did not appeal from the trial court's judgment.

{¶3}    Mother and her four children have an extensive history with children services agencies. While Mother resided in Cuyahoga County, children services cases were opened

during 2005, 2008, and 2012. Those cases focused on a lack of supervision of the children, domestic violence perpetrated against Mother and the children, and drug use in the home.

{¶4} During November 2013, because Mother had relocated to Lorain County, the children services agency in Cuyahoga County transferred its pending case with the family to LCCS. LCCS entered into a voluntary case plan with the parents, which focused primarily on protecting the children and Mother from domestic violence perpetrated by the father of D.G. ("Father G."). Among other things, the voluntary plan required Father G. to live elsewhere and to have no unsupervised contact with the children.

{¶5} When the caseworker visited the home in January 2014, however, Mother was at work and Father G. was caring for the children in violation of the voluntary case plan. Pursuant to revised voluntary case plans, the children were temporarily placed in the home of a relative and later returned to Mother's home. All of the voluntary case plans had prohibited Father G. from having any unsupervised contact with the children. Despite those agreements with LCCS, Mother would later admit that she had allowed Father G. to have regular contact with the children and that he had continued to abuse her in the presence of the children.

{¶6} Consequently, on March 18, 2014, LCCS filed complaints to allege that D.T. and D.G. were neglected and dependent children. They were removed from Mother's custody and placed in the emergency temporary custody of LCCS. One month later, they were adjudicated neglected and dependent and placed in the temporary custody of LCCS.

{¶7} Although the case plan required Mother to obtain a psychiatric evaluation because she reported a past diagnosis of paranoid schizophrenia, it is unclear from the record whether she obtained a psychiatric evaluation or received psychiatric treatment during this case. Instead, the focus of Mother's mental health treatment during this case was on counseling to address her

history of putting the safety of her children at risk by involving herself with men who perpetrated violence against her and the children.

{¶8} While the children resided in foster care for the next several months, Mother engaged in case plan services and LCCS believed that she had made progress toward reunification with the children. Consequently, D.T. and then D.G. were returned to Mother's custody under orders of protective supervision during February and April 2015.

{¶9} Shortly afterward, according to one of the caseworkers, "everything fell apart." Mother did not maintain consistent contact with LCCS or allow the caseworker regular access to her home. Moreover, she continued to conceal from LCCS and the guardian ad litem that she and the children had been maintaining contact with Father G. in violation of the case plan.

{¶10} Consequently, on May 6, 2015, the children were removed from Mother's home and returned to the custody of LCCS. After the children were placed outside her custody during May 2015, Mother engaged in some counseling, during which she disclosed a long history of involvement with abusive men, who had physically abused both her and her children. According to her counselor, Mother made little progress in counseling and failed to accept responsibility for her own behavior and/or understand how her poor choices had affected the safety of her children. Mother was eventually terminated from the counseling program because she repeatedly missed her scheduled appointments. Moreover, until her therapist and/or the caseworker directly confronted her with evidence to the contrary, Mother continued to falsely report to them that she had ended her abusive relationship with Father G.

{¶11} LCCS eventually moved for permanent custody of D.T. and D.G. Following a hearing, the trial court terminated parental rights and placed both children in the permanent custody of LCCS. Mother appeals and raises one assignment of error.

II.

ASSIGNMENT OF ERROR

THE JUVENILE COURT'S DECISION TO GRANT PERMANENT CUSTODY TO [LCCS] IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE REGARDING THE FINDING THAT PERMANENT CUSTODY IS IN THE BEST INTEREST OF THE CHILDREN.

{¶12} Mother's sole assignment of error is that the trial court's permanent custody decision was not supported by the evidence. Before a juvenile court may terminate parental rights and award permanent custody of children to a proper moving agency it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the children are abandoned; orphaned; have been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period; they or another child in a parent's custody have been adjudicated abused, neglected, or dependent on three separate occasions; or they cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under Revised Code Section 2151.414(E); and (2) that the grant of permanent custody to the agency is in the best interest of the children, based on an analysis under Section 2151.414(D). *See* R.C. 2151.414(B)(1) and 2151.414(B)(2); *see also In re William S.*, 75 Ohio St.3d 95, 99 (1996).

{¶13} The trial court found that LCCS satisfied the first prong of the permanent custody test because the children had been in the temporary custody of LCCS or another children services agency for more than 12 months of a consecutive 22-month period. Mother does not challenge that finding but confines her assignment of error to the trial court's best interest determination.

{¶14} When determining the children's best interest under Section 2151.414(D), the juvenile court must consider all relevant factors, including the interaction and interrelationships

of the children, their wishes, the custodial history of the children, and their need for permanence in their lives. *See In re R.G.*, 9th Dist. Summit Nos. 24834, 24850, 2009-Ohio-6284, ¶ 11.

{¶15} Mother's primary argument is that she loves her children and that her parenting problems have been resolved because Father G. is incarcerated. Although Mother's behavior in continuing her relationship with Father G. was a primary focus in this case, Mother had a lengthy history of involving herself with other abusive men and failed to recognize that those men posed a threat to her children. Numerous witnesses testified that Mother made no progress in changing her thinking and behavior and continued to choose her own desire to continue a relationship with Father G. over the safety of her children. She did not accept responsibility for how her own behavior put her children at risk, nor did she understand how her relationships with abusive men had affected her children physically and emotionally. The guardian ad litem expressed serious concern that D.T. was terrified of Father G., a man who had physically abused him, yet Mother continued to expose D.T. to Father G. The trial court heard testimony about how D.T. would physically react to the thought of being in a room with Father G. by sweating and tightening his body.

{¶16} Several witnesses testified that Mother minimized the trauma that D.T. had sustained and his need for ongoing counseling. Because of the physical abuse that he had witnessed and personally experienced, the case plan required that he engage in regular counseling. D.T. was diagnosed with post-traumatic stress disorder and his counselor opined that he would require long-term counseling. While in foster care, D.T. made progress in counseling because he attended regularly. While he was briefly returned to Mother's home, however, D.T. missed many counseling sessions and his counselor was unable to make contact with Mother. The counselor expressed concern about the missed counseling sessions because

D.T. was going through "a really big transition" by being back in his mother's custody and going to a new school after living in foster care for nearly a year.

{¶17} While the children were placed outside Mother's custody, her interaction with them was limited to scheduled visitation. Although Mother attended consistently, she often came late and did not engage in much interaction with the children. One caseworker testified that the children would actively seek positive attention from Mother but would not receive it. Another caseworker testified that she often had to intervene to supervise the children and that she tended to be the one who cared for the children during visits, not Mother. Several witnesses testified about the lack of bond between Mother and either child.

{¶18} D.T. and D.G., on the other hand, interacted well together and exhibited a loving sibling bond. D.G. is also closely bonded to the foster family, with whom she had been living throughout most of this case. D.T. had recently been placed in the same foster home and both children were doing well there. The foster parents were interested in adopting both children and understood the importance of keeping D.T. involved in regular counseling.

{¶19} Because the children were only three and six years old at the time of the hearing, the guardian ad litem spoke on their behalf and expressed her opinion that permanent custody was in their best interest. She described Mother's lack of affection toward the children and expressed serious concern that Mother ignores her children's needs by repeatedly exposing them to violent men. Given the lengthy pattern of Mother's behavior, the guardian ad litem believed that Mother lacked the ability to care for her children and keep them safe.

{¶20} The custodial history of D.T. and D.G. while Mother lived in Cuyahoga County is not clear from the record. The children have twice been removed from Mother's custody for extended periods after the family moved to Lorain County in 2013. While the children resided in

Mother's custody, they were exposed to ongoing violence and drug activity in her home. Because they had moved in and out of temporary placements for most of their lives, D.T. and D.G. were in need of a legally secure permanent placement. Mother was not prepared to provide them with a safe permanent placement and LCCS had been unable to find a suitable relative who was willing and able to so. The evidence fully supported the trial court's conclusion that a legally secure permanent placement could only be achieved by placing the children in the permanent custody of LCCS.

**{¶21}** Mother has failed to demonstrate that the trial court's decision was not supported by clear and convincing evidence. Consequently, her assignment of error is overruled.

III.

**{¶22}** Mother's assignment of error is overruled. The judgment of the Lorain County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

––––––

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is

instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
JENNIFER HENSAL
FOR THE COURT

CARR, J.
SCHAFER, J.
CONCUR.

APPEARANCES:

DANIELLA BEARDEN, Attorney at Law, for Appellant.

DENNIS P. WILL, Prosecuting Attorney, and EMILY KIRSCH, Assistant Prosecuting Attorney, for Appellee.

CYNTHIA JOHNSON, Guardian ad Litem.